**FILED**[1]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

FEB 0 2 2015

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

**BRENT LEE RHODES**, an individual, )
                                     )
                          Plaintiff, )
                                     )
**Kenneth Bethune**                  )
Previous attorney                    )
                                     )
                          Defendant  )
                                     )

**JURY TRIAL DEMANDED**

**CIV-15-0120 W**

### Complaint

COMES NOW Plaintiff, BRENT LEE RHODES, and for his Complaint against

Defendant, KENNETH BETHUNE the firm Bethune/Enright PLLC, previous attorney

for Extrinsic Fraud, Intentionally Neglected, Malpractice, Breach of Contract,

OKL.STAT. Section 9.1, and other claims as the Attorney on the SNU case CIV-11-

00071-F and states as follows:

### I.  PARTIES

1. Plaintiff, Brent L. Rhodes ("Rhodes"), is an individual who was at all times a

   citizen of the United States and been a resident of Oklahoma City, Oklahoma

   throughout this case.

2. Defendant, Kenneth Bethune is professional attorney that practiced in 1901 N

   Classen Blv Oklahoma City, Oklahoma 73106 and 117 N. Washington St.

   Beeville, TX 78102 during the case.

## II.    JURISDICTION AND VENUE

3.  Plaintiff incorporates by reference paragraphs number one through two as if fully set forth herein.

4.  The United States District Court for the Western District of Oklahoma has federal jurisdiction pursuant claims under the Rehabilitation Act of 1973, 29 U.S.C. § **794, § 1983,** and the **Americans with Disabilities Act, Title 42** U.S.C. §12132, § 12133 *et seq.,* as further set out herein, is founded upon the existence of a federal question and is authorized by 28 U.S.C. § 1331 and 1367, 42 U.C.S. §§ 1983, 1988, 2000-7, **2000e-5(f)(3) and 28** U.S.C. § 1343.Jurisdiction of the Court with respect to Plaintiffs claims arising under the laws of the State of Oklahoma, as further set out herein, is founded upon the Court's pendant jurisdiction as authorized by 28 U.S.C. § 1367. OKL.STAT. Section 9.1.  28 U.S.C. § 1291

5.  Venue is proper in this District pursuant to **28 U.S.C. § 1391 (b) and (c)** in the Western District of Oklahoma in that the actions giving arise to Plaintiff's complaint occurred in Oklahoma City County Oklahoma and Beeville, TX, within the Western District of Oklahoma.

## III. STATEMENT OF FACTS

6.  Plaintiff has exhausted any and all required administrative remedies prior to the filing of this Complaint, and said Complaint is timely filed with regard to each

Count. Plaintiff incorporates, paragraphs numbered 1 through 5 as set forth herein.

7. Rhodes is a disabled person as that term is defined by **Section 504 of the Rehabilitation Act of 1973,** and as further defined by the regulations on post-secondary education, **45 C.F.R. § 84.3(k)(3),** and the **Americans with Disabilities Act, 42 U.S.C. § 12101** *et seq.*(February 1993 August 1996). Specifically, prior to Plaintiff's acceptance into Southern Nazarene University, on November 22, 2000, Plaintiff was involved in an automobile accident and sustained injuries including but not limited to brain trauma and injury to his left leg requiring amputation of his left leg below the knee. Subsequently, Plaintiff was diagnosed with "Visio-Spacial Disorder," Post Traumatic Stress Disorder and depression. Plaintiff was at all times relevant to this cause of action and continues to be today an otherwise qualified individual with a disability. In addition, Plaintiff was regarded as having impairment by Defendant, and was/is entitled to reasonable accommodations.

8. January 21, 2011 [Docket 1] complaint against Southern Nazarene University filed for Brent Lee Rhodes by Timothy Beets.

9. February 08, 2012 [Docket 23] Timothy Beets filed MOTION to Withdraw as Attorney for Brent Lee Rhodes.

10. February 23, 2012[Docket 25] ENTRY of Appearance by Brent Lee Rhodes.

11. March 26, 2012 Rhodes first set of Request for Production of Documents and the request was mailed to the Defendants. [Docket 78 (Ex, YY)]. Rhodes records request was vital to the case.

12. April 2012 Rhodes found Kenneth Bethune out of the phone book after the previous attorney Timothy Beets quit ½ way though the case.

13. April 04, 2012 Rhodes met with Kenneth Bethune to discuss the case and dropped off the boxes. Rhodes gave Kenneth Bethune everything in chronological order so that it would be easier to understand what was going on the case against Southern Nazarene University. Rhodes gave Kenneth Bethune the C.D. that Timothy Beets scanned documents on that's [Docket 83 (Ex, 32)]. Kenneth Bethune had previous research notes and records from Timothy Beets put together to help eliminate days on the case and key focus points.

14. April 04, 2012 Rhodes gave Kenneth Bethune the original SNU Access Sheets of Dr. Dunnington and Dr. Spindle and discussed the issues with altering/forging records with Erin Toler name on them.[Docket 78 (Ex, A-B)]

15. April 04, 2012 Rhodes discussed the issues with Kenneth Bethune on the rest of Rhodes SNU Disability Documentation Analysis and Access plans that were altered and forged with Erin Toler name on them.

16. April 04, 2012 Rhodes informed and discussed the issues that SNU altering/forging most of the other SNU disability documents, which we had to get the DOJ and other state/federal agencies to handle this issue due to the fraud occurring. [Docket 78 (Ex, A-D)]

17. April 04, 2012 Rhodes and Bethune discussed the Judicial Hearing Process, which Bethune failed to handle investigate the issue before MSJ.

18. April 04, 2012 Rhodes and Bethune discussed the Grade Appeal for Val Long that was unethical and everyone involved.

19. April 04, 2012 Rhodes gave Kenneth Bethune the previous research notes and records on C.D. from Timothy Beets put together to help eliminate days on the case and key focus points that Timothy Beets assistance pointed out regarding ADA altered/forged documents.

20. Rhodes gave Bethune the records request that Rhodes took to the court house to be filed on PACER on March 26, 2012 and the request was mailed to the Defendants. [Docket 78 (Ex, YY)]. Rhodes records request was vital to the case.

21. Rhodes and Bethune discussed that depositions needed to be done ASAP and it was best to get records from the Defendants from the Plaintiff's first set of Request for Production of Documents. Also, with school being out that doing depositions might be easier like in August 2012. [Docket 78 (Ex, YY)].

22. April 04, 2012 Rhodes signed the written contract for Kenneth Bethune to represent Rhodes in the Southern Nazarene University case with the complete understanding that these issues would be resolved before MSJ.

23. April 05, 2012 Rhodes emailed Kenneth Bethune [Docket 78 (Ex, YY)] and the deposition questions to do on the SNU school officials, which Bethune can't say that he wasn't aware of this or didn't have.

24. April 16, 2012 Amended Scheduling Order, that Rhodes was clueless about.

25. April 11, 2012 [Docket 28] Entry of Appearance by Kenneth N Bethune on behalf of Brent Lee Rhodes.

26. April 23, 2012 is roughly when the Defendants had to respond to [Docket 78 (Ex, YY)] because of the 30 day policy on record production, which Bethune failed to follow up and push the issue that led to Bethune doing a records request on May 21, 2012.

27. May 17, 2012 Rhodes emailed Kenneth Bethune [Docket 78 (Ex, YY)] and the deposition questions to do on the SNU school officials, which Bethune can't say that he wasn't aware of this or didn't have. The attachment of deposition questions were more in depth that was vital to defend MSJ because it would've blocked the Defendants false testimonies and false allegations.

28. May 21, 2012, Kenneth Bethune filed Plaintiff's First Set of Request for Production of Documents that didn't make since whenever you see that I filed it in court that is Bate Stamped on March 26, 2012 in [Docket 78 (Ex, YY)]. The file clerk failed to upload it onto PACER, but Kenneth Bethune knew of it in advance. Kenneth Bethune Production of Documents was extremely shorter and not very specific that led to dragging out record production by the Defendants, which according to federal law the Defendants had 30 days to produce these records from March 26, 2012.

29. May 29, 2012-June 02, 2012 Rhodes sent Kenneth Bethune an emails trying to explain the issues with the Defendants about [Docket 78 (Ex, IIIII)] and not being

handicap accessible that was never addressed and Rhodes was trying to get grades straightened out for Capella University that led to lies in MSJ.

30. Around June 15, 2012 the Defendants finally turned over records that Kenneth Bethune requested

31. June 15-17, 2012 Rhodes emailing Bethune about records not being turned over and Rhodes was needed the rest of the records and complaining about the forged SNU ADA records. Rhodes needed these records and to file a court order demanding records that Bethune never did that hindered the case dramatically. April 08, 2013 [Docket 73] Rhodes tried to file Emergency Court Subpoena that was denied due to Discovery was over with. Rhodes asked Bethune to inspect the records at SNU that was never done either since certain records were not on the flash drive that Rhodes got from Bethune.

32. June 20, 2012 Bethune emailed Rhodes about the expert Jeff Kiel resume and cost of $ 1,500 that Bethune failed to use in the defense to MSJ that was vital to the case, which a normal attorney would've used to help defend the case regarding ADA issues. [Docket 78 (Ex, F)]. Jeff Kiel was also vital to the case because his qualifications for being an economist to help put value on the case instead of just making up random dollar amounts.

33. June 20, 2012 Rhodes emailing Bethune about records not being turned over and Rhodes was needed the rest of the records and complaining about the forged SNU ADA records.

34. June 22, 2012 Rhodes emailed Bethune about getting more experts in the case for Affidavits that Bethune failed to do of Dr. Buttos from Neuro Resources, Jennifer Birch from the Holloway Group, and Scott Sabolich. Bethune failed to even to contact these experts that were vital in the case.

35. June 25, 2012 Rhodes emailed Bethune about getting Dr. Edith King that Rhodes started seeing since 2000 whenever Plaintiff became disabled that has lot of federal trial experience. Rhodes also sent Bethune federal court cases to see if that will help him on the SNU case.

36. July 05-08, 2012 Rhodes emailed Bethune about needing to file forgery charges over the federal records against SNU and Rhodes wanted the police to show up at Bethune law office in Oklahoma City that was totally ignored that hindered the defense over MSJ and Denver Court of Appeals. [Docket 78 (Ex, A-B)] will show the original and altered documents. According to the police that I needed to file charges before the judge did his ruling on January 31, 2013. There was a meeting between Rhodes and Bethune on July 09, 2012, which Bethune said that he would handle the matter with the forged documents and police.

37. July 12, 2012 Defendants sent a response to a discover request and answers to the Defendants' Interrogatories questions, which this email and attachments is the last I was informed on what was going on in the case besides doing Rhodes Deposition. Also, July 12-16, 2012 Rhodes was asking for a meeting due to the lies being told in the response to the Interrogatories questions, which Rhodes wished that Bethune would've showed Rhodes before sending that to the

Defendants especially since Bethune was clueless on this case that is proven by the response to MSJ.

38. July 17, 2012 Rhodes emailed Bethune with attachment that was taken out of the 700+ document that described some of the altered/forged documents and main points over the Judicial Hearing, Grade Appeal & ADA that Bethune needed to look into.

39. July 20, 2012 [Docket 31] <u>Kenneth Bethune filed the Expert Witness List for Plaintiff Brent Lee Rhodes</u> . Bethune was going to use Jeffery Kiel that wasn't used to defend the case during the response to MSJ that [Docket 32-33] there was a Protective Order Filed that was Bethune emailed Rhodes.

40. July 23, 2012 [Docket 32] JOINT MOTION for Protective Order by Southern Nazarene University. Kenneth Bethune sent Rhodes this by email.

41. July 23, 2012 [Docket 33] PROTECTIVE ORDER. Signed by Honorable Stephen P. Friot, which Bethune sent to Rhodes by email that was the last filing that Kenneth Bethune informed Rhodes what was being filed before MSJ response. To clarify this the MSJ response from previous sentence Bethune did he failed to even show that to Rhodes the response and never allowed Rhodes to help since it was very apparent that he needed help because he lacked knowledge of the case and failed to have documents to submit.

42. July 25, 2012, Rhodes emailed Kenneth Bethune wanting to deal with forgery and getting the DOJ involved at least 10 times after talking to the DOJ on the phone about the altering and forging federal documents. It's very apparent that

any normal attorney would fully investigate the issues with altering/forging

documents knowing that the Defendants would do that like they did to OCR.

43. July 30-31, 2012 is around the time Defendants turned over some more records it

appears, but not the rest of the SNU ADA records that Bethune has failed for

months to require like Rhodes tried to do [Docket 78 (Ex, YY)].

44. August 01, 2012 Rhodes emailed Kenneth Bethune wanting to deal with forgery,

DOJ, dollar amounts, and to sit down to discuss issues in the case.

45. August 02, 2012, Rhodes emailed Kenneth Bethune wanting to get more records

from the Defendants that were never turned over and what records were the first

time ever seeing. This email attachment was important that Bethune failed to read

and investigate and demand a Court Subpoena after 6 months of asking, begging,

and being lied to that Bethune was going to handle the altered/forged documents.

46. August 04-06, 2012, Rhodes emailed Kenneth Bethune and had a meeting to

discuss the records that were not correct that Defendants turned over. Also, we

needed certain records to help out taken the main employee's depositions in

August while the class wasn't in session. The issue needing a court order for

Google since the Defendants IT department is ran through Google to retrieve

records that would prove the facts without being altered/forged and records that

SNU refused to turnover by the Defendants.

47. August 08, 2012 Rhodes sent Kenneth Bethune email of the list of the research on

advocates/lawyers and whomever that knew the law in case in case Kenneth

Bethune didn't know what he was doing or got confused. The email was sent

after talking to the individuals on the phone. One of the disability advocate

groups that were given was from CA that was beneficial.

48. August 10, 2012[Docket 35] Kenneth Bethune filed Exhibit List / Witness List

for Plaintiff Brent Lee Rhodes. Bethune knew in advance of what Bethune was

actually trying to use as exhibits that was totally not used for the response MSJ.

Bethune did submit Rhodes deposition that Bethune refused to allow Rhodes to

read or have access to deposition to clear up simple anything due to speech

problems & learning disability issues after repeated request that hindered the case

in the Western District and Denver Court of Appeals. Rhodes was clueless about

this originally until MSJ.

49. August 13, 2012 [Docket 36] SECOND AMENDED SCHEDULING ORDER

Rhodes was never aware of the scheduling orders and didn't know that they were

any deadlines because that was never explained to Rhodes. Apparently Discovery

was still available for both parties that Bethune could've interviewed witnesses,

court subpoena, and took depositions. Bethune was well aware of what exhibits

that were going to be used and many more main exhibits were missing that were

vital to the case regarding Rhodes SNU Disability file from Erin Toler, grade

appeal, Judicial Hearing, altered/forged that was explained to Bethune in by

emails, 700+ document, boxes of the case, and person.

50. August 17, 2012 Rhodes emailed Bethune about needing a court subpoena

For the SNU IT help desk that contained the information to help prove who was all involved in the cover up and the dates that things were changed. Rhodes tried going through Google, but Rhodes' needed a court subpoena.

51. September 13, 2012 Rhodes emailed Bethune with important issues to be resolved. Rhodes needed Bethune to push the issues with forgery and needing the DOJ involved like Rhodes has been repeating to handle, which is one of the main reasons why the Defendants won because of the fraud to OCR and federal judges. There are expenses spent so far on the case trying to get an ethical request to settle the case out at some point or had to be brought up to the judge.

52. September 20, 2012 Kenneth Bethune was talking about reconstructing the case that we didn't do. Rhodes feels like if that was extremely important to get in the other half the case handled that Bethune should've done it.

53. September 23-26, 2012 was the time trying to get prepared for Rhodes deposition that resulted in poor preparation of only having around an hour to prep for it the night before. Rhodes knows that an attorney sees repeated exhibits submitted during discovery that most likely those questions will be asked during the deposition.

54. September 26, 2012 was the date of Rhodes Deposition that Rhodes was never able to be seen until the Defendants used it during MSJ. Bethune told Rhodes to say "altered" and not "forged", which is the same thing during deposition that Bethune failed to bring up. Rhodes asked Kenneth Bethune repeatedly to get a

copy of it to see if we had to clarify deposition because of speech and learning disabilities but Bethune refused.

55. September 27, 2012-October 24, 2012 Rhodes emailed Bethune trying to get a copy of Deposition and videotape that was totally ignored in email. The results of not getting to review Rhodes deposition allowed the Defendants to take words out of context for MSJ and Court of Appeals. Bethune had too much court he said to sit down to discuss the deposition and had to rescheduled.

56. Around October 01, 2012 was basically the last time Rhodes was able to visit Bethune because Bethune took on lot more clients and moved to Texas until February 2013. Bethune promised to handle depositions, altered/forged documents, and get Rhodes a copy of Rhodes deposition that could've been attached into an email or picked up.


57. October 06, 2012 Rhodes emailed Bethune exhibits on the Langston case to help since both case were similar.

58. October 09, 2012 [Docket 37] Kenneth Bethune filed the Exhibit List / Witness List for Plaintiff Brent Lee Rhodes. Rhodes was unaware of this and key exhibits were missing for Discovery. Bethune failed to state the reasons why Bethune wanted to use certain exhibits because of the objection that the Defendants filed in [Docket 38].

59. October 19, 2012 [Docket 38] OBJECTIONS 37 Exhibit List / Witness List [Witness List] filed by Southern Nazarene University. The Defendants were using

intimation tactics on Bethune by knowing what Rhodes complained about on the 700+ document going into OCR that was in chronological order, which Rhodes submitted to the federal court in [Docket 83 (Ex, 32) of the CD's from Timothy Beets.

60. October 19, 2012 [Docket 39] Witness List [Final] by Defendant Southern Nazarene University. October 22, 2012 [Docket 40] Exhibit List [Final] by Defendant Southern Nazarene University. October 23, 2012 [Docket 41] OBJECTIONS re 37 Exhibit List / Witness List Exhibit List filed by Southern Nazarene University. Kenneth Bethune should've noticed by the Defendants complaining on the objections that it would've hindered their defense.  If Kenneth Bethune would've done Depositions that Bethune was told originally to be done in August or December 2012 that Rhodes was told that would've discredited the Defendants witness list

61. October 26, 2012 [Docket 42] Defendants filed UNOPPOSED MOTION for Leave [to File Oversized Brief] by Southern Nazarene University by (Johnson, Daniel). [Docket 44] ORDER granting 42 Defendant's Unopposed Motion for Leave to File Oversized Brief. Dft's brief in support of msj not to exceed 40 pgs. Signed by Honorable Stephen P. Friot. The oversize brief was not supposed to be more than 40 pages for MSJ, which the Defendants MSJ was 48 pages long.

62. October 29, 2012 [Docket 45] THIRD AMENDED SCHEDULING ORDER. Bethune knew about the Dispositive & Daubert Motions due 11/30/12. Bethune failed to notify Rhodes any of this information, which things could've been put

together to defend everything because it didn't take a rocket scientist to know
how to defend the case especially how the Defendants focus was on during
Rhodes Deposition and repeated emails in the 5 inch ring binder that the
Defendants turned over of certain records, which Bethune never persuade to
getting by subpoena on SNU IT help desk or Google that contained exact proof of
direct involvement of the cover-up.

63. November 13, 2012 Rhodes email Kenneth Bethune about doing Depositions
that was being put off until December 2012 since Bethune didn't do it in August.
Rhodes asking about the court order still that was has been totally ignored and nor
did Bethune ask for the vital records that SNU refused to turnover since May 05,
2009. Again, Rhodes kept bringing up the issues with the altering/forging federal
documents.

64. November 13, 2012 Bethune office emailed Rhodes to pick up 1-5 boxes from
Kenneth Bethune Oklahoma City office. Rhodes thought that Kenneth Bethune
had made copies of the documents since they were sitting in his office since April
2012. Rhodes' knows that there were copies made from the C.D. that Timothy
Beets that had the bulk of Rhodes' documents that were turned over to the
Defendants. Rhodes' knows that there was a copy of the C.D. that the
Defendants' turned over for court records that they only choose to turnover. It
was vital to have records to build exhibits for MSJ to defend the case besides
Rhodes deposition. January 2013, Kenneth Bethune told Rhodes by email that the

C.D. of records should be in the Oklahoma City law office because he didn't have it in Texas law office.

65. November 26-27, 2012 Kenneth Bethune emailed Rhodes about doing depositions at the end of January 2013 that it didn't make any since. Rhodes responded back in email wanting to talk to Bethune, but Bethune failed to inform Rhodes of deadlines of MSJ and extra. On the phone Bethune only wanted for jobs that I have applied for and some kind of offer to settle that expenses Rhodes already provided that was ethical.

66. November 30, 2012 [Docket 50] Defendants filed MSJ that was only supposed have been 40 pages and not 48 pages in length that Kenneth Bethune failed to file an complaint over the Defendants not following the Court Rules and Stephen P. Friot order in [Docket 44]. Kenneth Bethune failed to file a motion to block with the judge in a complaint to make the Defendants rewrite the MSJ like the Defendants did to Rhodes by being over on the word court on Rhodes first Appeal in the Denver Court of Appeals. If Kenneth Bethune would've filed a Motion to the Western District Federal Court House on MSJ it would've given the inexperience lawyer more time to defend the case ethically & talk to Rhodes.

67. December 03, 2012 Kenneth Bethune sent Rhodes an email saying that the Defendants filed for MSJ, which was days 4 days after MSJ was filed. All attorneys and judges knows that how PACER works whenever things are being filed on PACER that the other party is notified by email, which with how technology is now days the information goes to their cell phones.  Kenneth

Bethune giving the excuse that 4 days later and being away from any kind of internet is hard to believe.

68. December 03, 2012 Rhodes emailed Kenneth Bethune for him to call Rhodes because communication is a huge issue and since Bethune taken on clients in both states it neglected Rhodes case. In all of the emails Rhodes sent Bethune that you will see that Rhodes major concerns with the case were mostly ignored. Rhodes' wouldn't have sent so many emails if Bethune would've had proper communication with his client. December 03, 2012 Rhodes asked for the attachments that were filed on PACER to avoid having to pay for all that, which was totally ignored since it was free to him. Bethune only sent Rhodes a couple of things being filed in court in July 2012 in the entire case.

69. December 04, 2012 Rhodes emailed Kenneth Bethune asking to help Bethune out because there was a lot being filed on MSJ & Rhodes has the case memorized since Rhodes built the case.

70. December 06, 2012 Rhodes emailed Kenneth Bethune of some of the important issues that had to be used in the response to the Defendants MSJ that major issues to defend the case was totally ignored  after having to pull the information off PACER. The issues with the altering/forging federal documents, Erin Toler and Mary Jones false Affidavits, grade appeals, ADA issues that cause the case to end up the way it did, and Judicial Appeals. Rhodes told Bethune that I can build the exhibits, but I get lost on dealing with the law cases. Rhodes told Bethune that I have the case memorized and I can defend the case. Rhodes' told Bethune in

emails that he had to present the altering/forged documents to the judge in the response to the Defendant's MSJ to block the false allegations in the cover up. Rhodes asked Bethune to meet with him before this deadline that was totally ignored so Rhodes would know what was being filed & help fix any mistakes or help defend it ethically because Defendant's were lying in MSJ. This email is extremely important and it was totally ignored!!

71. December 14, 2012 Kenneth Bethune emailed Rhodes and only wanting to see one document from Val Long over the drama of guns that were totally taken out on context by describing Rhodes parents' home locked in a safe that was not really defended in court, which the Defendant's made Rhodes' out to be a Sandy hook shooter. Bethune had 4 other people working on the case and failed to even read the information the Defendants used as exhibits in the Grade Appeal.

Bethune changed phones or something so Rhodes had to go to the Oklahoma City law office to get his assistant to call Bethune because he wouldn't call me back to give Bethune the information. Bethune filed the response without even allowing Rhodes to review the information that was unethical. The issue again about depositions because school was out was supposed to happened, which Bethune knew it wasn't plausible because he knew the deadlines in the case by the Scheduling Orders. Point is if Bethune needed any kind of documents that Rhodes was totally unaware of the situation until after his response of MSJ was filed that Rhodes' would've drove 8 hours to his office, library, or home

depending on what excuse was truthful to ethically build a defense if Bethune wasn't going to do depositions.

It is obvious that failing to obtain copies of documents is negligent, which certain documents were on the Exhibit list on PACER that were going to be used that the Defendants didn't use that was vital to the case. Also, Rhodes pointed out some of Bethune mistakes that Defendants pointed out in [Docket 52].

Rhodes asked to do depositions since school was out because that was the agreement since Bethune didn't it in August 2012, which could've helped the case especially over the ADA issues since Defendants' wanted to altered/forged basically every records pertained to SNU. Then Bethune could've used Defendant's depositions also to notify the judge about the fraud upon the court that any reasonable attorney would've done.

72. December14, 2012 [Docket 51] RESPONSE to Motion re 50 MOTION for Summary Judgment filed by Brent Lee Rhodes. (Attachments: # 1 Exhibit 1- Rhodes Deposition, # 2 Exhibit 2-Emergency Suspension Letter was the only exhibits that Kenneth Bethune filed in court, which Bethune failed to submit exhibits like in Docket 50 by the Defendants or [Docket 78;81;83;Denver Court of appeals] that Rhodes submitted to the court in his defense to the case.

73. Rhodes' asked Kenneth Bethune to help retrieve all education records and other documents from the Defendants that was ignored. Rhodes' ask Kenneth Bethune to do a court subpoena and/or get records about 30-50 times by emails and person

because the Defendants choose to turnover what records that they wanted to, which Rhodes' tried to file court subpoena  after MSJ that was denied due to the discover process was over with by person and emails. Rhodes' filed a Discovery Records Request that was Bate stamped [Docket 78 (Ex, YY)] by the Western District Federal Court before Kenneth Bethune that was ignored by Kenneth Bethune and Defendants that Rhodes was trying to be specific on. Kenneth Bethune Discovery Records Request was extremely limited that resulted in not getting all the information that was vital to the case.

74. Kenneth Bethune failed to go through the OCR reports to see if the Defendants like Rhodes' had to do during **[Docket 78 (Ex, CCCC)]** that was explained in the motion because of the fraud on the case on ADA, Grade Appeal, Judicial Hearing process, & appeals. Bethune could've brought up the fraud to the federal judge that the Defendants committed whenever the Defendants were submitting and MSJ and MSJ exhibits but neglected to do so. Bethune wanted to use emails from Arthur W. Solis, OCR reports according to [Docket 37] exhibit list that Bethune neglected to do, Bethune wanted to use Arthur W. Solis from OCR but the Defendants called it unfair prejudice and confusion of the issues that was imperative in a cross examination in jury trial.

75. Kenneth Bethune neglected to get **FERPA** going on their federal investigation, which that FERPA didn't get their incomplete investigation until 2013. Rhodes new it was vital for FERPA to get involved to help get school records and amend school records that Rhodes started getting involved in 2009. The Defendants

bluntly lied FERPA and if Rhodes had an attorney the worker and director wouldn't have just let the Defendant's get by with committing fraud upon that agency as well.

76. Kenneth Bethune hired Jeffrey Kiel  expert for the case that cost Rhodes $1,500 that was never used or talked about to help defend the Defendants MSJ that was imperative for the case regarding ADA issues and Rhodes' disabilities. [Docket 78 (Ex, F)]. July 24, 2012, Bethune couldn't use the excuse by saying that he didn't have the Jeffrey Kiel report to defend the case because it was emailed to Rhodes.

77. Kenneth Bethune neglected to submit the Affidavit from Leane Buttross [Docket 78 (Ex, H)]. The report from Leane Buttross cost Rhodes around $500.

78. Kenneth Bethune neglected to submit the Neuro Resources [Docket 78 (Ex, E)] that was used to lie to the court and help forge Rhodes SNU Disability Records. The Defendants with intentional erased the "update to file 1/09" to the federal court in the cover up that Bethune neglected to point that out and defend SNU ADA records after having enormous notes and conversations over the topic [Docket 78 (Ex, A-D)].

79. Kenneth Bethune neglected to submit the Scott Sabolich Affidavit [Docket 78 (Ex, G)].

80. Kenneth Bethune neglected to investigate class witness of the issues that Rhodes was falsely accused of during Val Long class that was used against Rhodes during MSJ. [Docket 78 (Ex, J)].

81. Kenneth Bethune neglected to even call Dr. Edith King my psychologist to help with the case that Rhodes has been seeing since 2000 that has lot of federal trial experience. Rhodes told Kenneth Bethune that was told in person and email June 25, 2012 and she can only testify of things that she personally of knowledge of to prevent perjury.

82. Kenneth Bethune neglected to even call The Holloway Group the psychiatrist that is a medical doctor who specializes in preventing, diagnosing, and treating mental illness who Rhodes has been seeing to since 2009 to get any kind of Affidavit that is vital to the case.

83. Kenneth Bethune neglected to bring up to the court in [Docket 78 (Ex, YYY)] of the Defendants telling Rhodes on October 26, 2011 that they would pay $1,772.00 to get rid of the case because of the Val Long grading that helped started this case was unfair. Rhodes' busted the Defendants in many different lies that were in the 700+ document in chronological order why the Defendants weren't going to do the grade appeal. Defendants said that if Rhodes took the money that hindered his GPA that Rhodes could never return to SNU.

84. Kenneth Bethune only two exhibits that were turned in to defend MSJ were Rhodes Deposition and Emergency Suspension from [Docket 37]. Bethune refused give Rhodes or show the deposition to see about clarifying it.

85. December 2012, Rhodes' asked Kenneth Bethune to get the records being turned into PACER, but Bethune refused to acknowledge or turnover any of it that was vital to know and save money.

86. December18, 2012 Rhodes emailed Kenneth Bethune and wanted to talk because of concerns back in August 2012 that's vital to the case before Defendant's filed [Docket 52] because no depositions were done yet.

87. December 19, 2012 Kenneth Bethune emailed Rhodes saying that he was doing depositions late January 2013 and we have to wait until the Judge does his ruling on MSJ, which doesn't make any since due to the Discover wasn't over until 05/15/2013 according to the Third Amended Scheduling Order and depositions were never done. Also, doing depositions before January 31, 2013 would've allowed Bethune to strengthen the case by getting to the bottom of the altered/forged SNU records [Docket 78 (A-D)] to notify the court about the fraud upon the court.

88. December 19-27, 2012 Rhodes emailed Kenneth Bethune asking Bethune about not able to see the exhibits on PACER that Bethune that was being used on [Docket 35;37] that resulted in not being used that a normal attorney would've used. Bethune failed to explain why he didn't use the exhibits listed or that it was only used for what documents that Bethune was going to use to defend the case. Rhodes has kept asking for months to talk to Bethune about this case and Bethune was always doing other court cases to really talk since Rhodes deposition, but communication was greatly lacking before deposition.

89. December 21, 2012 [Docket 52] <u>REPLY to Response to Motion re 50 MOTION for Summary Judgment [In Support of its Motion for Summary Judgment] filed by Southern Nazarene University</u>. Defendants pointed out Kenneth Bethune mistakes in the [Docket 51] response to MSJ that normal attorney's wouldn't have done.

90. January 03, 2013 Kenneth Bethune email said "<u>I'm sorry you don't appreciate our efforts on your behalf. However, I had two lawyers and two support staff spend an entire week (approximately 60 hours of work) on the Response to the MSJ. I didn't even touch another client's work for a week. So understand that all effort possible was put into it... I did not feel comfortable expending your resources on deposing SNU staff unless I knew we could survive Summary Judgment. I'm sorry you disagree. You are welcome to seek other counsel if you wish.</u>

<u>I will contact you when the Judge rules on Summary Judgment. Until then I have to devote my time and attention to developing my practice here. I will be in touch then</u>". Bethune had two other attorneys and two assistants working on the response to MSJ supposedly work about 60 hours on the case and Bethune didn't work on any other person case that was brought up by email. If someone took 5 people and divided it into 60 hours that means that roughly 12 hours/person helping to defend the case, which that comes into around 1 to 1 ½ days of work on the case. Bethune had 14 days to prepare for the case regardless and not just one week. Rhodes' offered Bethune to help build exhibits to MSJ that Bethune said that he had it all under control, because Rhodes was willing to go to TX to defend

the case. Rhodes only issue defending the case is looking up court cases for the response to MSJ that Rhodes hired Bethune to do since he is a lawyer. Rhodes' tried to communicate by phone and emails, which Rhodes had to go down to Oklahoma City Office to have the sectary call Bethune to get Bethune on the phone.  January 03, 2013 saying if I didn't like his work "<u>You are welcome to seek other counsel if you wish</u>" and Kenneth Bethune was devoting his time with other clients.

91. January 04, 2013 Rhodes emailed Kenneth Bethune with more concerns with the neglect on the case and apologized to just avoid making him upset. Rhodes was clueless on what was going on the case because Bethune said that he had everything under control and help from another attorney. It was until the very end of November 2012 whenever Rhodes got onto PACER to start noticing Scheduling Orders of when things had to be done by.

92. January 28, 2013 Kenneth Bethune emailed Rhodes about setting the dates for the Defendants depositions next week after the judge ruled on MSJ.

93. January 29, 2013 Kenneth Bethune wanted the deposition questions that were given to him by person and several times by email going back to April 05, 2012. Bethune neglected to include the major people that were involved in the case that was vital to the case before MSJ. Rhodes went back to the emails that he sent Bethune and emailed them back on January 29, 2013.

94. January 29, 2013 Rhodes emailed Kenneth Bethune again with the deposition

   questions that were sent to Bethune back to April 05, 2012 and May 17, 2012,

   and in person. Bethune can't use the excuse for not having the information.

95. January 30, 2013 Rhodes emailed Kenneth Bethune with more concerns with the

   neglect on the majority of the case and about the altered/forged documents.

   Bethune should've filed police report to report the crimes, depositions, get other

   federal agencies involved, and handwriting specialist to resolve the issues with

   fraud upon OCR & federal judge over ADA records before January 31, 2013.

   Rhodes' more than willing to drive to TX for months, but Bethune wouldn't meet

   saying he didn't have an office as an excuse.

96. January 30, 2013 Kenneth Bethune emailed Rhodes stating "I do not have much

   here. However there is no need to come here. I am working out of a local library

   while my office is being remodeled and as such my ability to use the phone and

   internet has been limited. I also live too far in the country to get a decent cell

   phone signal. Understand that with these depositions, I only get 3-4 hours with

   each person. I will not have time to go through the thousands of pages of

   documents that we have accumulated in this case. Instead I'm going to focus each

   of my depositions on the most important pieces of information. The biggest

   things you can help me with are the access plans from Erin Toler. So far I think I

   have everything else that I need. I will try to call you today when I leave the

   library. Until then we are working on preparing for these depositions." Bethune

   had very little documents to do depositions and telling Rhodes that he didn't need

to drive to TX and the only thing he really wanted was SNU Access Plans from Erin Toler. **All attorneys knows that before doing depositions on the main topics that they have to have more than a couple of pieces of paper like SNU did to Rhodes during his deposition.** Rhodes was willing to ship Kenneth Bethune stuff by Fed X overnight. Bethune said that he didn't want to go through all the documents accumulated throughout the case and he really only wanted to use the SNU Access Plans from Erin Toler that were altered/forged for depositions after pointing it out again in emails, person, and phone repeatedly that they had to be used. There are the SNU Documentation Analysis and Erin Toler notes were missing and forged as well that didn't make any since at all either that was told in person, given in email, on C.D., and expressed to OCR, FERPA, Timothy Beets and throughout court records repeatedly representing myself in the case.

97. In January 31, 2012, the Oklahoma federal judge pointed out that Kenneth Bethune failed to defend 63 allegations in the case that resulted in losing the case. Rhodes emailed Kenneth Bethune stating that Rhodes had to pull the judge ruling that day.

98. February 01, 2013 Rhodes emailed Kenneth Bethune when was the time for the Defendants to be filing for Taxation of Court Cost.

99. February 04-05, 2013, Rhodes and mother met with Bethune for a meeting to discuss MSJ and Taxation of Court cost. We were told by Bethune that he didn't do appeals either and to find a different attorney. Bethune was going to find me

an attorney that resulted into no one. Bethune told Rhodes and Paula Rhodes that

he wouldn't tell the judge about the fraud and Rhodes' had to find another

attorney in the meeting after losing MSJ.

100.      Rhodes tried so hard trying to find an attorney in Oklahoma and

surrounding states after Bethune lost MSJ. There were hundreds of attorneys no

one wanted to touch the case or charge by the hour that would cost around

$30,000.00 because of federal judge response saying that Bethune failed to

defend all 63 allegations. Bethune cited things from the deposition that didn't

even relate to the subject and citing law without a court case to back it up that

Crow and Dunlevy pointed out in their second response to MSJ. Rhodes' was

informed how bad Bethune messed up the case by being neglectful, not listening

to Rhodes, refusing to have proper communication. Rhodes' even tried finding

attorneys for Pro Bono work and legal aide.

101.      Rhodes' had to battle it out over the Taxation of Court Cost since Bethune

neglected pretty much the entire case. Rhodes was informed by Bethune that

since I couldn't pay the money that I could file a Motion for Court Cost. Then

this information turned out to be totally false that is making Rhodes to pay the

Defendants' $2,561.13 at some point. Bethune should've known that the

Defendants were going to be submitting good court cases regarding the person

that prevailed in the case to be awarded court cost and being indigent was not

good enough excuse. Bethune didn't type up anything as the attorney to submit to

the court that would've been allowed the judge to go into Rhodes favor except

help with the Affidavit basically. In emails Kenneth Bethune didn't want Rhodes' to bring up vital information regarding the fraud upon the court and only why Rhodes couldn't pay, which seems very unethical for any attorney to do. Rhodes told the court about SSI and student loans, which that pretty much sums up the ability to pay Defendants. Bethune knew that fraud upon the court is highly illegal and oath of the attorney to notify the court.

102.     Kenneth Bethune failed to investigate and bring up the issue that the Defendants' wrote Rhodes a check out for college expenses that was never cashed because the amount was not correct. This could've reduced the amount of money owed over Taxation of Court Cost, but Bethune didn't feel it was appropriate to bring up.

103.     February 07-14, 2013 Rhodes emailed Kenneth Bethune trying to communicate with Kenneth Bethune because he was not reachable by phone or emails trying to figure out the Taxation of Court Cost, Defendants committing fraud, and trying to find an attorney to handle these issues.

104.     February 14, 2013 Kenneth Bethune emailed Rhodes saying "Sorry for the delay in getting back to you. The problem is that I spend almost every day travelling and I am rarely near a phone". Bethune couldn't find a malpractice attorney and Rhodes strongly feels this is not the truth because Bethune has a cell phone and Bethune law firm knows of attorneys.

105.     February 18, 2013 Kenneth Bethune emailed Rhodes saying "<u>filing an</u>

<u>appeal is certainly an option. I do not think it is a good one</u>"...Rhodes knew that

the Defendants won by fraud and Rhodes has a solid case against the Defendants.

106.     February 18, 2013 Kenneth Bethune emailed Rhodes saying "<u>I spoke with</u>

<u>attorney for SNU today. They are willing to dismiss their claim for cost if you are</u>

<u>willing to waive your right to appeal. I don't see an appealing successful, and it</u>

<u>would only cost you more money. My advice is that we should do this</u>". Rhodes

knows that if losing in Denver Court of Appeals that previous attorney can't use

the excuse of not exhausting all avenues to resolve the case ethically, which is

why the case went from [Docket 54-85] and months of battling in Denver. The

Defendants shouldn't have won on any of the false allegations.

107.     February 26-27, 2013 Rhodes emailed Kenneth Bethune about filing an

"<u>appeal to the to be considered as exhausting all remedies due to the judge might</u>

<u>have made a mistake so that the defense can't use it</u>". Then the issues of not being

able to contact Bethune by phone and email has been an issue throughout the

entire case, which is why there are an abundance of emails from Rhodes. More

concerns about the neglect from Bethune on the case.

108.     February 27, -March 05, 2013 Kenneth Bethune emailed Rhodes given his

thoughts on filing the appeal in Denver admitting that Rhodes had little chance of

winning because of the mootness in the case and Rhodes would be out more

money. Defendants would file court cost over Denver Court of Appeal and

Rhodes would be forced to pay the Defendants more money. Defendants didn't

make Rhodes file court cost, which Rhodes doesn't think Bethune is being

truthful and just an intimidation tactic. The attorney Andrea I believe at

Dollarhide law firm that was supposed to have been on the case originally failed

to help resolve any of this.

Also, through these dates are complaints of neglect that Bethune caused on

the case.

109.     March 07, 2013 Kenneth Bethune emailed Rhodes about withdrawing from

the case and refusal of doing the appeal. <u>"If you would like to ask for guidance or</u>

<u>to proof-read your documents, I will, but it will be done as a favor to you and not</u>

<u>your attorney".</u> Kenneth Bethune didn't do anything to the best interest of his

client and Bethune didn't really helped Rhodes bluntly lost MSJ and Taxation of

Court Cost. Bethune didn't withdrawal until 04 12, 2013. [Docket 75].

110.     March 11-26, 2013 emailed Bethune about more complaints about not

doing an ethical job on the case that resulted in negligence.

111.     March 26, 2013 email from Bethune March 26, 2013 Kenneth Bethune

emailed Rhodes saying <u>"Brent, I've been reading your emails, I think you need to</u>

<u>realize that on the costs matter your only point of contention is indigency</u>

<u>(meaning that you don't have any money). It has nothing to do with the merits of</u>

<u>the case (the reasons you think you should win). Its very important that you</u>

understand that if you go in there and try to argue merits, you will not win. You

must argue that you do not have the funds to pay the costs". Rhodes had to try to

explain to the judge issues of not being able to pay and that are vital issues to the

case that occurred is highly illegal.

112.      March 27-30, 2013 Rhodes emailed Bethune about trouble getting all

documents from Bethune because records were in Oklahoma and Texas

throughout the case. Also, more complaints about the case because of the

negligence. The issues of lack of communication have been a huge issue

throughout the case has been expressed in an abundance of emails.


113.      April 01, 2013 Bethune emailed Rhodes saying " I saw that the Judge ruled

against us. However, I didn't draft the Motion to Set Aside Costs, so I can't say

why the Judge found the way he did. I keep trying to explain to you that the costs

argument had to be made solely based on your lack of income and instead you

tried to reference things are the merits of the case, that are irrelevant to the matter

of costs. As to the 15 days to respond, I'm not sure who gave you that info, but

based on what you've shared with me, your response would have been similar to

your motion to vacate and the Judge would have felt the same way. At this point

your district court case is over. Should you win on appeal you could recover these

costs. I will be sending a closing letter in the near future, however I will continue

to help you as a proof-reader for your appeal if you would like me to". Rhodes

battled the court cost for 4 months up to Docket 83 and the last Docket in the

Western District Federal Court House was 87, which the judge said that Kenneth

Bethune should've brought this up previously and part of the case is on appeal.

March 14, 2012 [Docket 63] was the Costs Taxed in amount of $ $2561.53,

which April 08, 2013 the judge dismissed part of the case without prejudice in

[Docket 72] that the judge had to see something going on in the case was

unethical.

Bethune was the attorney on the case doing the Taxation of Court Costs, which an

attorney should've typed up the Motion Taxation of Court Costs besides telling me to

file the Affidavit and bills. Rhodes never had to file Motions before and clueless how

this was supposed to be done. Rhodes thought that Rhodes was going to see the

judge over the Taxation of Court Costs, which Rhodes was going to bring to the

court the forged documents since Bethune refused to defend the case that cost

Rhodes to lose the case.

114.    April 01, 2013, Kenneth Bethune emailed Rhodes saying ""The CD that

contains the discovery in this case is possibly in my office in OKC. I will attempt

to get somewhere there to locate it. However, you should have the majority of the

discovered material in the large boxes you took from my office. Keep in mind

that there is no more discovery to be done in this case, unless you win your

appeal. The appeal will center around summary judgment and the mootness of the

case. You essentially have to prove that the case is not moot. Documents will not

change the status of the law". How is Bethune supposed to put together a defense

if Bethune didn't have the C.D. or documents that contains the discovery in Texas

law office and it was in the OKC to defend MSJ?? The boxes that Rhodes picked

up from Bethune Oklahoma law office in November 2012 is what Rhodes was

told to do.

115.    April 02-03, 2013 Rhodes emailed Bethune about the issues of records

missing and Rhodes was trying to locate the C.D. to help build the defense over

Taxation of Court Cost, filing altered/forged documents claims, issues with losing

and owing money over Taxation of Court Cost, 10th District Court of appeals,

Rhodes had to file a court subpoena, and what all transpired in the case was

unethical.

116.    April 08, 2013 [Docket 72] Mr. Rhodes has filed a document entitled

"Motion to Have the Court look at Forgery/Altered Documents." Doc. no. 71 and

exhibits. The motion asks this court to review the merits of this action and to

change its ruling. This action is on appeal, and this court has no jurisdiction over

the merits. Plaintiff, however, may be able to assert grounds for relief from an

order or judgment, under the requirements of Rule 60, Fed. R. Civ. P. The

"Motion to Have the Court look at Forgery/Altered Documents" is DISMISSED

without prejudice to the filing of a motion for relief under Rule 60, Fed. R. Civ.

P. The judge dismissed part of the case without prejudice that the judge had to see

something going on in the case was unethical, Rhodes' tried everything and filed

pretty much all Rule 59 and 60, but the judge refused to acknowledge it in

[Docket 81 or 83] because the case was in the Denver Court of Appeals.

117.    April 12-15, 2013 Bethune withdrawn from the case. [Docket 75-76]

118.    Around April 16, 2013 Rhodes met with Arther Linfield retired F.B.I

handwriting specialist 405-736-1925 saying that the [Docket 78 (Ex, A-E)]

looked identical to Erin Toler handwriting with the altered/forged documents.

119.    April 16-19, 2013 Rhodes emailed Bethune to complain about Bethune

negligence issues and inform that Rhodes figured out the altered/forged

documents that Bethune should've done around a year sooner.

120.    May 07, 2013 Rhodes emailed Bethune saying that I was semi able to

figure out [Docket 78] by doing Bethune job and Rhodes wasn't happy with his

attorney representative skills.

121.    Communication issues=Rhodes' was given so many different excuses from

Kenneth Bethune why he wouldn't contact Rhodes so that we could get this case

prepared correctly. Rhodes' was told that he wasn't going to take on anymore

clients that were a lie especially opening up another office in Texas at his current

location. Rhodes' was informed that Kenneth Bethune had no internet; working

out of the library, and his office was getting worked on in Texas.


122.    After July 2012, Rhodes' was clueless on what was getting filed in the

court room basically until the very end of November 2012 by going on PACER.


123.    Kenneth Bethune failed to take Rhodes Affidavit that could've been used to

defend the MSJ.

124.     Rhodes' was clueless of the court docket of what was going on and

whenever things were due in court. Rhodes had to get on PACER to see what was

going on in November –December 2012, which Rhodes asked Kenneth Bethune

in emails to send the information off PACER to save money that was totally

ignored.  In emails and phone to Kenneth Bethune in the response to MSJ that

Rhodes' kept asking Kenneth Bethune to help him defend the case since most of

everything was memorized of the information of the records that was turned over

by the Defendants. Rhodes' had to print off everything off PACER to see what

was going on since Kenneth Bethune refused to give Rhodes' information.

Rhodes' knew how to match up evidence with merit to respond to the

Defendant's MSJ like Rhodes' was doing after Kenneth Bethune took himself off

the case. In Docket 78-83 and in the Denver Court of Appeals Rhodes had

presented so much evidence to make the Defendants case moot. Rhodes was

informed by both federal judges that Kenneth Bethune had to bring all of this

information up originally to the response of MSJ or it was moot.

125.     All attorneys are required to submit to the court the exhibits and witnesses.

Kenneth Bethune knew of some of the case obviously and what he was going to

defend on the case. Kenneth Bethune at the very least could've really applied

Defendants exhibits to the response to MSJ like Rhodes was doing on the Denver

Court of Appeal.

126.     Kenneth Bethune response to MSJ was citing information from Rhodes' deposition that had nothing to do with anything and trying to explain a situation without citing the case with it. Kenneth Bethune response to MSJ was extremely short and only used Rhodes deposition as any kind of evidence. The Defendants' had 63 false allegations that was basically ignored by Kenneth Bethune , which technically he should've broke down each allegation like Rhodes had to do for the Denver Court of Appeal. Kenneth Bethune was citing law in the response to MSJ, but failed to insert the court case.

127.     Kenneth Bethune admitted that I would lose the Denver Court of Appeal in person and by email because of the judge ruling on MSJ. Rhodes was told by email that the Defendants could collect money if Rhodes lost his appeal in Denver, which I don't think this is true because the Defendant's failed to do so as a scare or intimidation tactic.

128.     The only time Kenneth Bethune brought up to Rhodes about doing an Affidavit was over Taxation of Court Cost.

129.     In March 2013, Rhodes' still didn't get all records from Kenneth Bethune and Rhodes' kept asking him and Rhodes' tried to get the records from Adam Childers that was not turned over by Kenneth Bethune to build my defense and

there were documents that were never turned over, which I tried to get by phone, person, and emails.

130.    Rhodes' was not given all records and clueless on the federal rules, how to prepare federal document brief until after Docket 78. In Docket 78 was a rough draft with exhibits building the defense that was imperative that Bethune should've done. In Docket 79 the judge demanded the Defendants to respond since the Defendants were refusing to respond to Rhodes court filings over the alter/forging his SNU Disability paperwork, fraud, perjury, discrimination, retaliation, slander, and extra to the OCR investigation and federal judge. In Docket 80 the Defendants lied to the judge so that they can keep up with the same lies. In Docket 81 Rhodes pointed out the lies coming from the Defendants again and thought that Rhodes was going to have a fair chance to get this all resolved ethically. In Docket 82 the judge responded back by saying that part of the case is on appeal and this should've been brought up originally by Bethune. In Docket 83 Rhodes responded back complaining about the not getting a fair trial and issues that Rhodes is complaining about with Bethune.

131.    The Denver 10th District Court Appeals Rhodes broke down each of the 63 false allegations on Defendants Motion Summary Judgment, which Rhodes went over by the words and had to redo it. The first appeal is something what Kenneth

Bethune should've done in the response to the Defendants Motion Summary

Judgment by defending the case ethically.

132.     The Denver 10th District Court Appeals Rhodes had to shorten the appeal

to get under the maximum amount of words, which Bethune should've

complained about the length during MSJ, but failed to do so because MSJ was 8

pgs too long.

133.     The Denver 10th District Court Appeals the Defendants responded back

with more false information to keep up the cover up and fraud to 2 federal

agencies and 2 federal judges since Bethune failed to investigate, file police

report, contact F.B.I., DOJ, Oklahoma Attorney General, depositions,

handwriting specialist, or notify the court about the fraud upon the court that an

attorney would do especially since this case developed over ADA and led to

everything else.

134.     The Denver 10th District Court Appeals Rhodes responded back pointing

out where the Defendants are bluntly lying to the Oklahoma Western District and

Denver 10th District Court Appeals. Rhodes also provided exhibits from the

FOIA about what was going on between OCR and SNU investigation.

135.     In January 31, 2014, Denver 10th District Court Appeals judge pointed out

bluntly that Bethune should've presented all this information to provide ethical

defense against the Defendants MSJ. Denver said the ruling on MSJ was correct by going off Bethune and inadequate defense.

136.    According to OKL.STAT. Section 9.1 the Defendants could've been forced to pay up to $500,000 for the intentional and reckless behavior that would've resulted from **constructive, mail and wire fraud** [Docket 78 (Ex, CCCC)] with the OCR federal investigation because of the extensive cover up by the Defendants. Then [Docket 83 (Ex, 32)] the Defendants knew in advance what Rhodes was mainly complaining about to OCR in the 700+ document about the intentional altered/forged documents with **malice** before bringing that into the Oklahoma Federal Judge. [Docket 78 (Ex, A-D)].

http://law.justia.com/codes/oklahoma/2006/os23.html

## AS FOR A FIRST CAUSE OF ACTION

(Negligence-Legal Malpractice)

137.    Plaintiff repeats and states facts in Paragraph 1-136 of this Verified Complaint.

138.    Defendant Kenneth Bethune was negligent in his representative of Plaintiff.

139.     Defendant Bethune failed to exercise that degree of reasonable knowledge and skill that lawyers of ordinary ability and skill possess and exercise while Bethune represented Plaintiff.

140.    Defendant Bethune failed to exercise reasonable care in representing Plaintiff.

141.    Defendant Bethune, during representation of Plaintiff, failed to exercise that degree of care commonly exercised by an ordinary member of the legal profession.

142.    The acts and omissions of Defendant Bethune constituted legal malpractice, demonstrate that he was professional negligent, and establish that he failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community.

143.    The negligent and omissions of Defendant Bethune which occurred subsequent to the filing of the Southern Nazarene University Case, but are not limited to, the following acts and omissions:

(a) Representing the Plaintiff throughout the Southern Nazarene University Case when it was apparent that he lacked the ability to competently represent the Plaintiff;

(b) Negligently preparing materially inaccurate amendments to schedules, for discovery, and response to MSJ, and response to Taxation of Court Cost;

(c) Negligent representation in the connection of contacting police or federal authorities of the criminal acts by Southern Nazarene University employees with altering/forging federal documents pertained to Plaintiff SNU Disability Records;

(d) Negligent representation of demanding certain ADA, Judicial, Grade appeal records to be turned over from the SNU with a court subpoena from the SNU IT desk or Google;

(e) Negligent on doing the FOIA with OCR to get records if Defendants failed to turn over records that Rhodes had to do in 2013.

(f)  Negligent representation of inspecting all records at SNU;

(g) Negligent to represent Plaintiff on dealing with FERPA to retrieve, inspect, and amend Plaintiff records;

(h) Negligent to inform Rhodes of dates and what was being filed with the deadlines, which Rhodes had to find information out by PACER end of November 2012. This is called **extrinsic fraud**.

(i) Negligent on providing client court documents even after asking Bethune that were filed or being filed.

(j) Negligent on resolving the grade appeal that hindered Plaintiff G.P.A.

(k) Negligent representative to keep track of all of Plaintiff records between Oklahoma and Texas.

(l) Negligent of proper communication;

(m)      Negligent to allow Plaintiff to view deposition;

(n) Negligent to take depositions until after the judge ruling on MSJ;

(o) Negligent to contact medical providers and witness that was warranted in the Plaintiff defense for Affidavits;

(p) Negligent on providing Expert Affidavit on the case that was hired to defend the ADA claims on MSJ;

(q) Negligent on using other Affidavits on the case from Neuro Resource and Scott Sabolich;

(r) Negligent of establishing the allegations that Plaintiff was statutorily protected, caused an adverse action and causal connection in the response to MSJ that Western District Federal Court pointed out in [Docket 53]; [Docket 78]

(s)  Negligent on establishing the Equitable relief, Declaratory Relief, Injunctive Relief, Prospective Relief, and Affirmative Relief on the response to MSJ that Western District Federal Court pointed out in [Docket 53]; [Docket 78];

(t) Negligent representation of notifying OCR about constructive, mail and wire fraud and Western District Federal Court about the constructive and wire fraud upon the court by SNU in their response to MSJ in the intentional and extensive cover up.

(u) Defendant is negligent in **Extrinsic fraud** who intentionally keeps information from his client about an upcoming hearing or trial could be held responsible for extrinsic fraud, as well as being subject to disciplinary action and a legal malpractice lawsuit.

(v) Defendant has acted intentionally and with malice breached its duty to deal fairly and act in good faith with Plaintiff of negligence throughout the case, which SNU did the same thing. According to OKL.STAT. Section 9.1  (C).  Category II. Where the jury finds by clear and convincing evidence that:

144.     Defendant Bethune committed malpractice and was professionally

negligent in the course of his representation of Plaintiff throughout the Southern

Nazarene University Case.

145.     Defendant Bethune representation of Plaintiff fell below the level of

reasonable skill and knowledge commonly possessed exercised by an ordinary

member of the legal profession.

146.     Defendant Bethune representation of Plaintiff fell below the level of

reasonable care commonly exercised by ordinary member of the legal profession.

147.     As a direct and proximate result of Defendant Bethune negligence, Plaintiff

has been damaged by, among other things:

(a) lost income;

(b) legal fees which Rhodes was forced to incur;

(c) a forfeiture MSJ judgment and Taxation of Court Cost fine;

(d) student loans;

(e) starting over in college;

(f) medical expenses

(g) college expenses that never got resolved and the check that wasn't cashed;

(h) reputational damages, public ridicule, and derision

148.     Defendant Bethune negligence proximately caused, and was a substantial

factor in causing, Plaintiff damages.

149.     But for defendant Bethune negligence, Plaintiff would not have suffered the aforesaid damages.

150.     As a direct and proximate result of Defendant Bethune negligence, Plaintiff has suffered monetary damages of at least in the amount of eight hundred ten thousand dollars ($ 810,000), plus interest.


## AS FOR A SECOND CAUSE OF ACTION

### (Breach of Contract)


151.     Plaintiff repeats and realleges each and every allegation contained in Paragraph 1-150 of this Verified Complaint.


152.     Plaintiff entered into a contractual agreement with Defendant Bethune pursuant to which Defendant Bethune was to be compensated in exchange for providing services to Plaintiff.

153.     Defendant Bethune failed to perform his obligations under the aforementioned contractual agreement.

154.     As a result of Defendant Bethune breach of contract, Plaintiff has been damaged in the monetary amount of at least eight hundred ten thousand dollars ($ 810,000).

155.     By reason of the foregoing, Plaintiff is entitled to a judgment against

Defendant Bethune in the amount of at least eight hundred ten thousand dollars

($810,000), plus interest.


### AS FOR A THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)


156.     Plaintiff repeats and realleges each and every allegation contained in

Paragraph 1-155 of this Verified Complaint.


157.     Defendant Bethune was Plaintiff's attorney.


158.     There was a fiduciary relationship between Plaintiff and Defendant.


159.     Defendant Bethune breached his fiduciary relationship with Plaintiff by,

among other things: (a) representing Rhodes even though Bethune knew or

reasonably should have known that Bethune was not competent to represent

Rhodes; (b) failing to contact state and federal authorities to press criminal

charges of the intentional fraud with malice throughout Southern Nazarene

University Case; (c) failing to notify the court about the fraud upon the court and

OCR; (d) failure to do court subpoena or make Defendants turnover key

documents; (e) failed to take depositions or Affidavits; (f) failed to defend 63 allegations according to [Docket 53]; [Denver] (g) Taxation of Court Cost.

160.     As a result of Defendant Bethune breach of fiduciary duty, Plaintiff has suffered compensatory damages in the amount of at least eight hundred ten thousand dollars ($810,000).

161.     By reason of the foregoing, Plaintiff entitled to a judgment against Defendant Bethune in the amount of at least eight hundred ten thousand dollars ($810,000), plus interest.

162.     **WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A) As to the First Cause of Action, a judgment in the amount of at least eight hundred ten thousand dollars ($810,000), plus interest;

B) As to the Second Cause of Action, a judgment in the amount of at least eight hundred ten thousand dollars ($810,000), plus interest;

C) As to the Third Cause of Action, a judgment in the amount of at least eight hundred ten thousand dollars ($810,000), plus interest;

D) Attorney fees;

E) Cost; and

F) Such other and further relief as this Court deems just and equitable.

## AS FOR A FORTH CAUSE OF ACTION

### (Extrinsic Fraud)

163.     Plaintiff repeats and realleges each and every allegation contained in

Paragraph 1-162 of this Verified Complaint.

<u>Fraudulent acts which keep a person from obtaining information about his/her rights to</u>

<u>enforce a contract or getting evidence to defend against a lawsuit</u>. Defendant Bethune

failed to help track down all education records and even file court subpoena after

numerous request for the SNU IT desk and Google because obtaining critical information

was warranted that the SNU covered up with fraud that SNU knew that not turning over

the information would result with fraud upon OCR investigation and court.

164.     Defendant Bethune failure to seek out handwriting specialist, state and

federal authorities over altering/forging documents resulted Defendants MSJ

favor over the Southern Nazarene case and Taxation of Court Cost.

165.     Defendant Bethune failure to do depositions prevented an adequate defense

against the SNU perjury.

166.     Defendant Bethune was Plaintiff's attorney.

167.     Defendant Bethune intentionally keeps information from his client about an

upcoming hearing or trial could be held responsible for extrinsic fraud, as well as

being subject to disciplinary action and a legal malpractice lawsuit.

168.     Defendant Bethune failed to notify Plaintiff of the Scheduling Orders of

upcoming events in the case.

169.     Defendant Bethune failed to provide Plaintiff deposition after numerous

request and failing to turn over court records after asking for the information that

was filed on PACER.

170.     Defendant Bethune failed to perform his obligations under the contract.

171.     Defendant Bethune failed to exercise that degree of reasonable knowledge

and skill that lawyers of ordinary ability and skill possess and exercise while

Bethune represented Plaintiff.

172.     Defendant Bethune failed to exercise reasonable care in representing

Plaintiff.

173.     Defendant Bethune, during representation of Plaintiff, failed to exercise that degree of care commonly exercised by an ordinary member of the legal profession.

174.     Defendant Bethune committed malpractice and was professionally negligent in the course of his representation of Plaintiff throughout the Southern Nazarene University Case.

175.     Defendant Bethune representation of Plaintiff fell below the level of reasonable skill and knowledge commonly possessed exercised by an ordinary member of the legal profession.

176.     Defendant Bethune representation of Plaintiff fell below the level of reasonable care commonly exercised by ordinary member of the legal profession. The acts and omissions of Defendant Bethune constituted legal malpractice, demonstrate that he was professional negligent, and establish that he failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community.

177.     Defendant Bethune negligence proximately caused, and was a substantial factor in causing, Plaintiff damages.

178.     But for defendant Bethune negligence, Plaintiff would not have suffered the

aforesaid damages.

179.     As a direct and proximate result of Defendant Bethune negligence, Plaintiff

has suffered monetary damages of at least in the amount of eight hundred ten

thousand dollars ($ 810,000), plus interest.

## AS FOR A FIFTH CAUSE OF ACTION

### Punitive Damages

180.     Plaintiff repeats and realleges each and every allegation contained in

Paragraph 1-179 of this Verified Complaint.

181.     Defendant Bethune was Plaintiff's attorney.

182.     According to OKL.STAT. Section 9.1 the Defendants could've been forced

to pay up to $500,000 for the intentional and reckless behavior that would've

resulted from **constructive, mail and wire fraud** [Docket 78 (Ex, CCCC)] with

the OCR federal investigation because of the extensive cover up by the

Defendants. Then [Docket 83 (Ex, 32)] the Defendants knew in advance what

Rhodes was mainly complaining about to OCR in the 700+ document about the

intentionally altered/forged documents with **malice** before bringing that into the Oklahoma Federal Judge. [Docket 78 (Ex, A-E)].

183.     Rhodes was **statutorily protected** on the claims in the case that the Defendants caused the **adverse action,** which there was a **causal connection** occurring because the SNU employees that resulted in pretextual claims that Bethune failed to try to bring up like in [Docket 53] of the Oklahoma ruling over MSJ that the judge pointed out. Rhodes in [Docket 78-8;9];[Denver] had to go back and defend the **statutorily protected, adverse action and causal** connection that the Defendants totally had to lie to the judge after being demanded to respond in the **[Docket 79].**

184.     As a result of Defendant Bethune OKL.STAT. Section 9.1, Plaintiff has been damaged in the monetary amount of at least eight hundred ten thousand dollars ($ 810,000).

185.     By reason of the foregoing, Plaintiff is entitled to a judgment against Defendant Bethune in the amount of at least eight hundred ten thousand dollars ($810,000), plus interest.

**Certificate of Service**

**I, Appellant, Brent L. Rhodes, hereby certify that on January 31, 2015, I served a copy of the by U.S. Mail to Kenneth Nollen Bethune @ Bethune|Enright, PLLC100 E. Hutchinson Street, #112  Beeville, TX 78102 via email at: Kenneth@BethuneEnright.net, (361) 277-1114**

**January 31, 2015**

**Brent Rhodes**

**s/ Kenneth Nollen Bethune**

**Kenneth Nollen Bethune, OBA #30015**

**Bethune|Enright, PLLC**

**100 E. Hutchinson Street, #112**

**Beeville, TX 78102**

**(361) 277-1114**

**(405) 212-4872 (Facsimile)**

**Kenneth@BethuneEnright.neto**